All right. Our next case for argument is 22-2101 Nippon Telegraph and Telephone Corporation versus Director Vidal. Mr. Saunders, please proceed. Thank you, Your Honor. There are two simple issues on appeal in this case, despite the complicated subject matter. One is a straightforward issue of claim construction. Due to disclaimers in the specification of 720 patent, it requires excluding equalizers from the construction of interference, Counselor. So it's really, I'm going to stop you for a second. The one thing that has really baffled me and made it hard for me in this case is your entire brief is disclaimer, disclaimer, disclaimer. I get it. Do you realize you didn't use that word before the board? The word disclaimer doesn't appear in any of your briefing before the board. Now, you do at one page state that because you said equalizers are not part of the present invention, they should be excluded from the claim construction. And you cite the Verizon case, which happens to be a disclaimer case. But you literally didn't use the word disclaimer in your brief anywhere. You use it like a thousand times here. And one of your complaints was that the board didn't take seriously and address your argument about disclaimer. I find that criticism hollow because you didn't use the word in your briefing to the board. So I don't know what to do with that. I mean, I'm not going to say you waived the issue entirely because you, you stated that that sentence should impact and limit your claim construction and you cited a disclaimer case for it. But it was, it was a little hard for me. This, this case I found to be difficult and I understand to some extent why the board struggled with it. I appreciate that, Your Honor. As, as you pointed out, I mean, we did cite the relevant case law disclaimer. We didn't use those magic words. Obviously a lot of the record below focused on arguments that we're not pursuing on appeal, which I think is a lot of the confusion probably. And a lot of why the board ultimately spent much more of their reasoning. What issue are you not pursuing on appeal? What was that? What issue are you not pursuing on appeal? Well, the primary issue is under the quote unquote district courts construction, which is also the construction that was adopted by the board and the preliminary or the decision institution and the board ultimately, so it's correct construction. We're not raising the issue of invalidity under that construction. Which one? The construction that the board adopted. Aren't you arguing that there should be a negative limitation in the claim? Correct. That is the construction. Rather claim construction, there should be a negative limitation, which in essence says interference counsel and counselor cannot be an equalizer. That's correct. Yeah. So before the board, we argued both, you know, the claim construction argument, but then even if we lost on claim construction, we'd still win as a matter of fact. And that's the part, the matter of fact, if we, you know, let's assume for one second that I agree with you, that claim column four line 64 creates some sort of disclaimer. It has an impact on claim construction, but what it says is in the present invention, an OFDM method is used to realize a signal communication system for an MIMO channel without using an equalizer. So what that says is in the present invention, our whole system doesn't use an equalizer. You're asking me for a disclaimer that says this one component of our system, the counselor shouldn't have an equalizer in it. That's not what that says. What that says is my whole system does it. And it makes sense that you said the whole system does it in column four, because the entire prior arc was about a series of antennas, a series of equalizers, which reduced the delay, the ISI delay before it got inputted into the counselor. And so the equalizer was a separate component. And I have a really dumb question. Are they both hardware? Is the equalizer a thing, a piece of hardware? The answer is sometimes. I think that's sometimes. Because like I was trying to think, is it like a low bandpass filter? You know what I mean? I was trying to understand, is this hardware or software? But am I right to understand the prior arc was antenna, equalizer, counselor. And the equalizer was reducing only one of the forms of noise, the ISI delay. It wasn't touching stabilization and other noise. But it was reducing that before it went into the counselor. Does that sound right? That's correct. I mean obviously there's also that iterative process with how the output is then put back in. Yes, and there's lots of antennas. And you know, I mean this is like, right, there's multiple antennas. Yes, that means multiple antennas. Okay, so you've got the prior arc, and the prior arc has this equalizer that is a separate thing that precedes the input signal going into the counselor. And so you say, no, my system uses no equalizers. So I guess, is the disclaimer, my system uses no equalizers as components unto themselves that feed into the counselor? Or is my disclaimer, my system uses no equalizers anywhere, anyhow, no matter what? So I guess this ties to two of the issues that the PTO made on PL. One is kind of a textual hook issue, and one... Don't worry about the issues, just answer my question. Well, I'm trying to frame the answer in the context of the arguments that we made. And you're right, in column four... I got to get it right, whether you made the right argument or not. I understand. So I would say the law of textual hook says that we're going to apply this, we're going to apply a statement about a system, we're going to find a claim, we're going to apply that claim construction if it's not... I don't want to know about textual hook. What I want to know about is, what is the scope of your disclaimer? Not where in the claim you're going to attach it, but what is the scope that I should attribute to this language? I think this language is, in fact, a disclaimer. I agree with you on that point. I just don't know what it's a disclaimer of, precisely. And that's what I'm trying to understand for you, because I'm not sure... For example, suppose somebody else has a system, like the prior art, where there's an equalizer and then a canceler. If I just adopt your construction that the canceler can't have an equalizer, are you going to try to assert it against the person who's got an equalizer in advance of the canceler? They're going to say, oh, I don't have an equalizer inside my canceler. Do you understand the problem I'm having? I understand. Yes, I understand. We do think the appropriate construction is reflected in the term interference canceler. Well, your patent, your court's patent recognizes equalizing. If you look at column 56 in your patent, your patent says that in this circumstance, the noise amplitude is equalized. Okay? So there's some equalization going on in your patent, and as a matter of fact, that kind of equalizing at column 56 is the same kind of equalizing that exists in Raleigh, which is what you contend made Raleigh into an equalizer. If you look at JA 1893, you'll see the language that you cited to try to prove that Raleigh is an equalizer, not an interference canceler. And that language says in Raleigh, it equalizes the strength of each resulting sub-channel, which is the same as equalizing the amplitude, right? Yes, Your Honor. So our position on appeal is that— What I'm trying to get at is that your claim of what it is that makes Raleigh an equalizer is something that your patent recognizes is going on inside your own patent. I understand— Am I correct? I understand the point you're going to make. Correct? Yes or no? I don't believe so, and our position is that— Well, what's the difference between noise amplitude is equalized in your patent? This is column 56. Our position on appeal— What's the difference between that and equalizing the strength of resulting sub-channel? Our position on appeal is that— Can you answer me the question? The answer is no. I don't have that. I believe that's an appropriate matter of subject of experts, and our position is that the board never made a factual finding that under—if our construction was adopted, the board never made a factual finding that said, Raleigh's ZF solution is not an equalizer. That's not a factual finding that appears in there. In fact, they called it a ZF equalizer. Well, they made a finding on AJ-17 that even if they determined that the proper construction precludes equalization, the predictive citation of Raleigh doesn't allow an equalization. Well, we addressed that point, Your Honor, and that's the issue of— What I was trying to get at is what the chief and presiding judge was asking was, well, what kind of equalization was the patent saying we don't do? And we know from the prior arc what kind of equalization that was doing, and your patent says we don't need to do that. And I think what the presiding judge was asking was, does that actually mean that there's a surrender of scope for some other possible kind of equalization, which is not computer-difficult-driven? I understand, Your Honor. There's nothing computer-driven-difficult about equalizing the strength of the sub-channels? The particular position we took as the scope of equalizers on Appendix 310, which we cite in our reply brief at 23, so that's the position that we took regarding what the equalizer means in this claim term, as construed by our construction. But our position is that it's not a question that has to be reached because the board didn't make that finding that it's not an equalizer. But what you're trying to do here is you're trying to neuter Raleigh as a reference, right? Well, yeah, we're trying to— That's the thing. I mean, that's what it's all about. You get rid of Raleigh as what probably anticipates your claim because Raleigh seems to have the matrix and has all the makings of an interference canceler. We're trying to distinguish the Raleigh reference. We've narrowed the number of ways that we're distinguishing it from below. The first would be to claim that it is nothing but an equalizer, and that argument you really can't make because of the fact findings on the board that it actually is an interference canceler with a matrix system in the center. So in my mind, you lose the argument that whole, lock, stock, and barrel, an equalizer, like prior art equalizer. So then the question is, does Raleigh cease to be a prior art reference because it has some equalization going on in it somewhere? Yes, that's the position that we took was that— So then the question comes back to the presiding judge's, I think, great first question, which is, well, if there's some form of surrender scope, if there's not a surrender scope, you sit down and you move on. But if there is some surrender scope, what was it? If, for example, Raleigh was nothing but a prior art equalizer, then in case you win, because clearly that would be excluded. But you have an equalizing function in Raleigh, which I'm pointing to, J.A. 1893. That's the only reference in Raleigh at all that you cite to to say that it's an equalizer. Correct? Well, we also cite to the expert's characterization. No, I'm talking about impact. That's correct. That's if one sentence equalizes the strength of each subchannel, and you're saying that's enough of an equalizer to neuter a reference which clearly contains your channel or the matrix system. And you don't meaningfully contest the board's four fact findings that Raleigh teaches that it appears canceled. Well, it doesn't teach the portion of the interference. So our position is that as our construction was proposed, it had two components. The construction had a positive limitation, which is about reducing interference, and had a negative limitation, which was excluding equalizers. We're not challenging that positive aspect of the limitation. That's what I'm trying to say. So it's the only question why Raleigh would fall out as a prior art reference is that it refers to equalizing the strength of each resulting subchannel. Well, not just the fact that Raleigh refers to it, but the fact that both experts below agreed that this ZF solution was an equalizer. Well, nobody's denying that Raleigh equalizes the strength of each resulting subchannel if that's the equalizing function. No one disputes that. But your own patent recognizes that your own patent does the same thing. I'll have to say, Your Honor, that... So you've got a little dilemma from my perspective. Because how can you say something in Raleigh disqualifies it as a prior art reference, when it has in connection with an interferent answer, when you say, we can say that. If I could add to that, my understanding is your position on appeal is you can only win if you get the full scope of the full disclaimer that you're arguing for. Is that right? Well, I would say if there's any, if the court adopts any other construction, then the appropriate act would be to vacate and remand under Chenery. At a minimum, we can't affirm if we adopt any construction other than yours. If we find some disclaimer not as broad as the one you've argued for, we can't affirm. I mean, yes, you can't affirm it would be appropriate to vacate and remand. We can't reverse for you, right? Similarly, you could not reverse. Yes, you would have to vacate and remand if there's a third construction. What do we do with this? I mean, my problem is I see a disclaimer in column four. I don't know how you could include otherwise. The president mentioned this method doesn't include equalizers. And it does seem to me that the board didn't address that, really. So what, I don't know that you prevail. In fact, I'm leaning against you, to be honest, because I mean, like if I were deciding this using the disclaimer, because I think you're trying to force the disclaimer into only one component of the method. And I think that would not at all be consistent with what you were trying to actually disclaim, which were equalizers that preceded the interference canceler. And the way you're trying to put, no, you just can't have an equalizer inside the interference capacitor, I actually think you're trying to recapture some of what you've disclaimed. But I think the disclaimer might be broad enough that it also, when it says no equalizers, it means no equalizers, full stop, anywhere, no matter where in the system. So it might include no equalizers inside the interference canceler. I'm not sure. You know, but I do think that your articulation of what you think the scope of the disclaimer is, is wrong. But I do think there's a disclaimer. So assuming that's where I come out, what do I do with this case? I think the answer is, the appropriate answer would be to vacate or amend. If we're not adopting entities construction as is, where it's in the context of an interference canceler, and we're not adopting the board's conclusion that there is no disclaimer, then the appropriate response is to vacate and amend. And what happens, we don't have a petitioner here any longer, is my understanding. So what happens on remand? Well, I guess there's, the board has some options. It's probably going to ask for additional briefing and... The board can choose to proceed. The board can choose to proceed. The absence of a petitioner does not end the proceeding, correct? That's correct. I mean, unless there's some motion to terminate the proceeding, that's correct. Just one more. Column four uses the present invention three prior times before we get to the line we've focused on. Is it your contention that all of that also has the effect of disclaimer, meaning I don't infringe unless I do everything in column four? That's not an issue that we've made a contention on, and I haven't reviewed each of those. But logically, would you agree that has to be your position if the basis of the disclaimer is the present invention is? Well, just one clarification. That's not the sole basis for our conclusion in support of our construction. We also point out, first of all, there's the criticism of equalizers, and so criticizing and distinguishing prior art is another basis for the construction. We also point out that there's that difference between looking at the figures before and We look before in the prior art figure, we have both equalizers and interference cancelers. We look in the embodiments, the invention figures, we only have interference cancelers. So taking all of those items together, we think makes it clear that the board erred. Certainly, the present invention invokes the court's case law on that issue. And none of the claims use the term equalizer or equalizing or anything like that, correct? I don't believe so. Would you at least agree it's kind of an odd way to claim what you contend is the key innovation of this patent to do it through the definition of interference canceler, which appears nowhere in the patent? Well, I also appreciate it. It certainly looks like it's the key, but we're just focusing. We've narrowed our arguments down on appeal. So we're focusing on a clear error by the board rather than all potential arguments, what our invention makes it novel. How do we know that Raleigh teaches equalizer? Our position is that the board did not make a factual finding that Raleigh is not an equalizer. Is it possible that on remand it will be determined that Raleigh doesn't teach an equalizer at all, as the word equalizer is used in your patent? I think that would be hard in light of the factual record. In particular, the fact, as we point out, in the very opening of the petition with the petitioner's declaration, they said they called it an equalizer. Our expert was consistent in calling it an equalizer. So with both sides' experts having called it an equalizer, I think that's a hard conclusion. But obviously the board can reach its own conclusion on remand. Well, your argument is that the reason why Raleigh is an equalizer is because of one quotation at J.E. 93, whereas the same language appears in your patent. So it's hard for me to believe that Raleigh actually teaches an equalizer, as you meant to exclude equalizers in your patent. Well, certainly there's no factual dispute that the board had raised and addressed about what the meaning of equalizer is. However, if it's told that there is some form of disclaimer, then once it decides what the disclaimer is, it can go into Raleigh and look at Raleigh and say, is that kind of equalizer present in Raleigh? Yes, that is. To me, Raleigh presents an interesting case, because it seems to be no doubt that Raleigh does teach the claimed interference tenancy. The question is whether or not Raleigh falls away as a record because it teaches something else. Certainly the question is whether Raleigh is excluded because of the negative aspect of it. Whether Raleigh includes the thing you said can't be there. Exactly. Okay. All right. Sit. Way over your time. Way over. I'll restore two minutes of rebuttal time. Mr. Amin. Is it Amin? Mr. Amin, please proceed. Good morning, Your Honors, and may it please the Court. If I might, I'd like to start with the Raleigh prior reference, because I think it gives us something concrete to look at and to evaluate the rest of the disputes. Did the Board make any fact findings with regard to Raleigh? Yes, and I think the critical fact finding in terms of the dispute here I think is on page 17 of the Board's decision. Page 17? That's correct. Okay. So in the pages preceding the Board address the situation where, like address the argument under the dispute. On page 17. What's the fact finding that you're saying is first of all? They, here they reject NTT's argument that the disclosure in Raleigh is an equalizer. Can you point me to the exact sentence? Sure, the second full paragraph. So the second sentence of that sentence, that paragraph states, absent the construction that Patinorum proposes, equalizers are not recited as a negative limitation. And then the Board provides an alternative finding. Even if we determined that a proper construction did preclude equalization, petitioner citation in Raleigh does not rely on equalization, but instead on Raleigh's TSP, RSP, and multiplication. So I think in context, the Board, in context I think it's clear that the Board is rejecting NTT's argument that Raleigh is limited to an equalizer. So even if equalizers are read out of the claim that Raleigh still teaches the interference canceling limitation. I think that the Board made a similar finding on page 29. What's 29? First full paragraph, first paragraph, second sentence, petitioner relies on the ZF algorithm procedure in Raleigh to cancel. At the very top. Late sentence says Raleigh is the interference counselor and whether or not it equalizes is irrelevant. Right, so I guess the Board provided two alternative, because there were two. But the sentence that I just read to you seems to me to feed into the argument that was going on earlier, which is does Raleigh do any equalizing? And I agree. I think the Board did consider that issue, but I think the Board separately considered the issue of whether even if equalizers were excluded, does Raleigh teach the claim? And I think that's what the Board found in Appendix 17. And I think on page 29, the second sentence is making that alternative finding. That second sentence at the top of the page. Yes. And if I might also. Well, that says petitioner relies on the ZF algorithm procedure in Raleigh to cancel ISI interference and does not rely on equalization. That's not the same question as whether there's an equalizer in there. I agree with you. I guess the clearer passage then would be Appendix 17. Basically what's happening is that Raleigh doesn't, the equalization that Raleigh does to modulate the signal strength, which I talked about, which the patent also does, doesn't have anything to do with the matrix system that is producing the interruption cancellation, right? Yes, I think so. Yeah, I think the idea that both the patent and the prior art envision the same equalization effects, I completely agree with. And so I think that even if there were to. I understand that the patent and the prior art focus on the same equalization effects, but the problem is what do we do with this disclaimer at the bottom of column four that says in the present invention, an OFDM method, you know, for an MIMO, for MIMO channels without using an equalizer. It is really broad. It doesn't say the interference canceller doesn't use an equalizer, which of course it doesn't because the prior art didn't have equalizer contained within the interference canceller. But it also doesn't say, and I just mean an equalizer preceding the input to the interference canceller. It is much broader. It says the present invention has no equalizers in it at all in the whole method, right? Am I, is that a fair reading of that sentence? I think that what this sentence is conveying is the goal that the present invention is trying to achieve. And I think that. Can we talk about a little bit about, I mean, the presiding judge has indicated, her view that she thinks this probably is a disclaimer of some scope. But isn't it possible to read that language? It says we do it without an equalizer, meaning we don't need to use one. We do it without it. We don't need to use an equalizer. That's not the same as we, you can't use an equalizer. Yeah, and that is the way I understand it. Excluding the scope says you can't use it. If it's there, it's, it's poisonous. Right. And so that is the way I read this. And that's the way I understand NTT's expert who testified on this passage to describe this as being a goal that they're trying to achieve as opposed to kind of limiting the invention itself. I think Judge Stark, you're pointing out that the preceding three paragraphs all state the present invention is, the present invention is, the present invention is. This paragraph does not state the present invention is. It says in the present invention, there's no equalizer. Right. And I think that, and as NTT's expert, Dr. Hernandez explained, what that's saying is that when you use OFDM, you don't need an equalizer. And so that, and I think that's, and then the next sentence, I think. I mean, to me, the first argument is there's a disclaimer and reasonable minds might or might not disagree with that, but one way to read it is that what this patent doesn't found a new way to do it. We don't use equalizer. Exactly. If you did some equalizing, you would, you can't be an interference counselor. Exactly. I think that's one way to look at it. The other way to look at it is the way that presiding judge. And I think, I think the former way is the only way to look at it for two reasons. One, I think if you read that paragraph. You rely on the law that says, especially if you're reading a negative limitation in your claim, you're supposed to be pretty darn confident that that's what you're supposed to be doing, right? Absolutely right. And I think it's also clear based on column 41 in Raleigh about line nine. Did the board refer to this? The board, I, I don't believe, I'm not sure if the board referred to this, but I think. So if the board didn't rely on column, that column in Raleigh and make this point, can we really use it on appeal or isn't there a Chenery problem with that? I don't think there's a Chenery problem here because, because this issue. We can look at portions of the reference that the board didn't mention as supporting their fact findings. Well, I think that the reason why this court can look at it is that the question wasn't really posed to the board. The board, NTT before the board, NTT gave them two options for resolving the dispute between parties. One was a largely factual dispute, which is no longer an appeal. And the other one was this legal argument. The board chose the first one said we'll resolve this on the factual dispute. And the board therefore did not need to reach the second issue. Like the legal disclaimer argument. And so the reason why I think that like this passage would be referred to in the first time of appeal is that this kind of legal claim construction issue wasn't really teed up before the board. Well, they argued for a negative limitation and the negative limitation comes from the language that the presiding judge is talking about. Well, so I guess I would refer the court to Appendix 349. What page? 349. 349. 349. Okay. And so this paragraph is explaining their position to the board. They're saying that the kind of the plain and ordinary meaning as explained in Section VI, they're saying the preliminary construction already excludes equalizers. So that the preliminary construction is the one that does not have the negative limitation. They're saying that that does not exclude equalizers. And then they make the disclaimer argument. But the way they frame it is that, however, to the extent the board feels this exclusion could be made more explicit, it would be appropriate to do so. And then at the end, the last line, they say, although it is not necessary. So they're telling the board, you don't need to construe it this way. Wait, but on page 347, turn back two pages. And at the page, the board begins second and bold. They have multiple arguments in the alternative here. Second, the 720 paragraph describes, quote, the present invention, end of quote, as providing a method of signal processing that, in bold and italics, does not require involvement of an equalizer. It is well established that the descriptions of, quote, the present invention, end of quote, can limit scope. And they cite Verizon, which is 100% a disclaimer case. Absolutely. And this is that second argument, which they told the board, you do not need to reach. They made that clear. They don't want the board to reach it if the board finds it in favor of them on the first argument. We have this all the time, right? I'm going to give you two alternative arguments. If you agree with me on one, you don't have to reach two. It's very appealing to us judges to have that happen. Well, I think that this is not an argument on the alternative. They're giving the board two different options to resolve the dispute before them. They're not saying, if you find against this on A, you must consider B. They're saying, here are two different paths for resolving the dispute. If you find against us on either way, that resolves the dispute. OK. Well, I understand the second path here, because it's the one that's entirely on appeal. What's the first path that you say, which I don't think is on appeal, right? What is that first path? And that's the path that the board chose, was whether or not ISI qualifies as unwanted signals or noise, which was part of the construction before the board. The board expressly rejected the notion of bringing a negative limitation under the claim. That has to be as a matter of clean construction. Yes. So I think the board did touch on that. I'm confused. And the other parties are arguing that that was wrong. And then now you pointed us to something the patent owner gave to the board that said that the president mentioned does not require involvement of an equalizer. Does not require. That's a whole lot different from saying the patent requires an exclusion of an equalizer. Correct. Absolutely. And so I think that that's kind of the issue. As to the nature of what, whether there is in Column 4 a disclaimer, if so, what it is, as opposed to whether it's simply a statement of we don't need one. This statement by the patent owner himself seems to me to say we don't require involvement of an equalizer. Maybe there will be one, maybe there won't. We don't require. I absolutely agree with that. And I think that's supported both by the discussion of what they thought the problem was with equalizers on Column 3. And I think it's absolutely supported by Column 41, which I think states pretty clearly that the patent envisions that interference cancelers can have equalization effects. Column 41 of the patent. That's Appendix 112. Now, I'm really confused about what line. Starts at about line 9. Line 9, incidentally. Yeah, that's correct. The subcarrier interference canceler 315 achieves a similar. It's where it starts incidentally. Oh, that's correct, yes. This just says we do it a different way than signal equalization, right? No, it's saying that the operation of the subcarrier interference canceler has a signal equalization effect. No, it achieves a similar effect to signal equalization. So it's saying we do it, we get to the same result in a different way. Well, I think that the sentence that starts with that is explains what that means. That is, interference cancellation reproduces the original digital signal. I don't know where you are. I'm sorry. It's about line 16. Line which? 16. Thus? That is. That is. That is, the interference cancellation reproduces the original digital signal, and hence the amplitudes are always constant. That's exactly what Raleigh says when he says equalization. Is it reproducing the original signal, the amplitude, that one which I talked to earlier? Yes, yeah, exactly. And that's exactly what Raleigh is doing. You should say so. I mean, so what you are saying is that the patent recognizes equalization for a particular purpose for leveling the amplitude, and that's what this is saying, and that's what the other provision I'm going to do is saying, right? Yes, absolutely. So does that go to whether there's a disclaimer, or does that go to the fact that there's no reason to disqualify Raleigh because all Raleigh is doing what the patent says? I think it goes to both. I think that if we're considering the issue as to whether there's a disclaimer of the term interference-canceler, I think it goes to both, because I think that if you look at this passage and the background passage, what that tells you is that you are... Forget the term interference-canceler. I know that's what piece I did, but suppose this patent actually issued with these claims. Are you telling me this claim would read on a device that looks very similar to the prior R, maybe has slightly different limitations, not relevant to what we're discussing, but which has an equalizer that reduces the ISI delay and feeds that input into an interference-canceler? Are you saying that these claims, since they don't use the word equalizer, would read on a device that has that prior R combination, equalizer, feeding into an interference-canceler? No, we're not saying it would read on that. How could it not read on that? Because that limitation is not in the claim unless this is a disclaimer. I agree with you, and that issue wasn't really litigated below, and I don't think it's really relevant to the Raleigh reference. Do you not believe that the thing at the bottom of column four is a disclaimer? It's not clear to me that it is a disclaimer. If it's not clear to you that it's a disclaimer, it can't be, right? Because disclaimers have to be clear and unambiguous, correct? Absolutely. So if that's the case, if it's not clear it's a disclaimer, then this claim as issued would read on a device that actually has an equalizer that reduces ISI delay and then feeds that exact signal into an interference-canceler. That's what you're asking me to conclude. I'm not, because I think that they would have a separate argument then based on what's disparate in column three. So I agree with you. So I think that if that were the case, then their argument would be our negative limitation is based on what's in column three. The background section. I was just looking at what's on column four. That sentence that you pointed to me, if you're honest. And you don't think the combination of what's on column three and what's at the bottom of column four create a disclaimer with regard to an equalizer feeding into an input signal for the interference-canceler? I think that column three can be read that way. So you think there's a disclaimer in this case? It's just in column three, not column four? So I guess what I was trying to say is that there is that at most... We need to adopt an argument that there is no limitation on the use of an equalizer in these claims. What I'm saying is that that issue wasn't considered below. And so, and that wasn't disputed between parties here. I think that if there's a disclaimer, that's the disclaimer. That equalizers cannot be used as the input into an interference-canceler. But that wasn't the issue because that's not what Raleigh teaches. Raleigh, the only mention, as Judge Cleaver pointed out, the only mention to equalization is that one clause in column 18, which if I have a minute, I'd love to turn to if that's okay. Well, you're actually beyond your time, but yes, you can turn to it. Okay. So I think that what's critical is that two points for Raleigh. One, Raleigh teaches everything that the NTT says you need to do to obviate the need for an equalizer. And I think that when you turn to appendix 1892 and 1893, I mean, if you keep in mind what- Just let me ask you, we affirmed this patent is dead. Is that right? Like it's gone? Like there's no patent? But what's the ultimate result here? I'm not sure that all the claims were canceled, all the claims were challenged. And so I don't think that's a, but I guess I'd have to double check to make sure. I'm not sure whether all the claims were challenged here. Okay. Why, and while you're thinking about that, why did the petitioner drop out? What happened? Did they settle or something? I believe so, yeah. Yes, not all the claims are challenged on appendix eight. So the patent itself wouldn't be- Do we know if there are any other pending suits? I'm not sure. I understand there were other suits in Western New York of Texas. I'm not sure if all of them also got dismissed. But if I might just very briefly just touch on the Raleigh reference, because I think it resolves the claim construction issues move, because if we keep in mind what NTT says is an equalizer, as a device designed to equalize, I think it's clear when you look at columns 16, 17, 18, that this ZF solution is not designed to equalize at all. Column 16- Well, no, the ZF solution is the interference controller. Yes, I understand you say it's not designed to equalize. The question is, does it contain an equalizer? Well, I think that, I think those two are the same because on page 20- I could say something like this device isn't meant to, you know, build up resistance or capacitance or whatever, but that's a different question from this, does it actually have a capacitor in it? And I agree with that. I think that what's critical is on page 23 of the reply brief, that's how they define equalizer, is a device that's designed to equalize. So for this to fall into the carve-out that they're trying to establish within the claim language, it must be designed to equalize. But it was designed to equalize what? Well, yes, I think that, but also I think it's clear that this is not designed to equalize. Of course, I mean, both the patent and Raleigh recognize that there is equalization occurring. Right. The signal is critical. And I think in their re-hearing request, they acknowledge that when you're canceling interference, spatial interference, that is not equalization. That's not the equalization they're concerned about. No, because it's elect. It's not spatialized. Well, so, and Raleigh's concerned with spatial asset, spatial interference. And I think that, like, for example, if you look at column 16, lines 59 to 64, that describes what the purpose of this ZS solution is in Raleigh. Yeah, but I mean, I don't know. You keep talking about all this purpose stuff, but I mean, I think of these things as things, right? If there's a capacitor, there's a resistor. That's why I asked at the outset, does it equalize or a thing? And I think the answer to that is that it's hard to tell because all these terms are defined functionally. And so they could be met by hardware or they can be met by software. The proposal that they proposed to the district court with respect to interference cancelers said explicitly said software or hardware and or hardware. So it could be either. And okay, we're way over our time. Do you have anything further you feel like you really need to talk about? No, nothing. Thank you. So first, I'd just like to address the argument regarding whether the board was presented with two options to resolve the dispute. We don't believe that's the correct characterization of the arguments that we're making. We're clearly making arguments in the alternative. An example of that, why it was clear, the heading on appendix 345, the intrinsic record and canons of claim construction require exclusion of equalizers. That's a very clear argument that we're making, hey, this is a claim construction argument. And the language that counsel pointed to later on in that same section on 349 was just as Judge Moore suggested. It was, hey, if we win on this other factual dispute, which is the one that's not on appeal now, you don't need to actually get to this claim construction aspect. But because the board did not agree on the factual aspect, it did need to reach that. And in fact, the board did reach it. The board did understand that there was a negative limitation being met. It just didn't have a proper analysis. And I just directly go to 347 because I have the same concern that I think Judge Clevenger raised to the extent, and maybe you didn't have to say disclaimer to the board, but how do we read this sentence second as a disclaimer argument? It seems to be when you say the 720 patent describes the present invention as providing a method of signal processing that does not require involvement of an equalizer. That means it doesn't require an equalizer, but perhaps it may have an equalizer. I think the most reasonable reading of that sentence is you look at the next sentence immediately after that in the same paragraph when it says, it is well-established that description of this present invention can limit the claim scope and limit its size. Would you at least say your disclaimer argument is ambiguous? I would say it could have been more artfully drafted. And certainly, I would have included the word disclaimer more. But yeah, when it says, you know. Or at all. Yes, Your Honor. When it says can't limit claim scope, that is going beyond simply saying you don't need an equalizer. As far as we go without, what do you mean, is it required? Well, that's the first sentence that Judge Stark was pointing to. But the second sentence, which is that we do it without, doesn't undermine the fact that it isn't required. Well, I think the most reasonable reading of that second sentence in the last whole paragraph from 347 of the appendix is that we are making an argument about claim scope. We're making argument that claim scope has been limited, which is a disclaimer. The problem for me is I don't see your argument prevailing. Your argument is that the interference controller itself doesn't have an equalizer. That's not what was in the prior art that you were trying to avoid. What was in the prior art you were trying to avoid was a separate equalizer apart from the interference controller, preceding the input to the interference controller. So I don't see how the disclaimers you've argued for on appeal comport with what I understand through columns three and four, this patent was achieving an advantage over in the prior art. Well, I think Your Honor correctly pointed out that in column four, line 63 through 65, we do have a disclaimer language that is not just saying, you know, using an equalizer exactly as used in this one example here. The other concept is... Yes, but we have to read the patent as a whole to figure out what the clear and unmistakable disclaimer is. We can't take one sentence out of context. And all through paragraph three, what you're talking about are the disadvantages of having a separate equalizer as a predicate before the input to the interference controller. And this entire patent makes it clear that equalizers and the interference controllers are two separate things. So, I mean, I'm just not persuaded by your desire to say this sentence should absolutely require a claim construction related to an interference controller. I mean, that's kind of what I come down to. I think there is a disclaimer in columns three and four, but I don't think it's the one that you're asking for. I guess the other point I would raise is that the other language resides to the fact that it's generally, you know, talking about equalization as in related to complexity. And this is part of the focus of the improvement of the invention for late to. There are no other pending matters. I'm sure matters could arise depending on the outcome of this proceeding. OK, thanks. I think both counsels would be to take another submission.